IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-01900-SKC-SBP

SARA SCHMITT,
*an individual*

    Plaintiff,

v.

UMB FINANCIAL CORPORATION,
*a Missouri corporation*,

    Defendant.

## ORDER RE: MOTION FOR SUMMARY JUDGMENT (DKT. 33)

This case arises from Defendant UMB Financial Corporation's purported denial of Plaintiff Sara Schmitt's disability accommodation request. Dkt. 1. Plaintiff asserts claims pursuant to the Americans with Disabilities Act and the Colorado Anti-Discrimination Act and contends UMB discriminated against her based on her disability. *Id*. She seeks to recover "[e]conomic damages, including without limitation, lost wages, lost benefits and out of pocket medical expenses; [n]on-economic damages for emotional distress; [p]unitive and/or liquidated damages as permitted by law; [and] [f]ront pay." *Id*. The Court has jurisdiction under 28 U.S.C. § 1331 because this matter arises under Federal law, and it has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

1

Before the Court is UMB's Motion for Summary Judgment. Dkt. 33. The Motion is fully briefed. Dkts. 38 (Response), 51 (Reply). The Court has carefully considered the Motion and related briefing, the exhibit attachments, the entire case file, and the applicable law and legal authorities. No hearing is necessary. Because, when considering the undisputed material facts, no reasonable jury could conclude UMB discriminated against Plaintiff, UMB's Motion is GRANTED.

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, then the nonmoving party must identify material facts showing there is a genuine dispute for trial. *Id.* at 324. A fact is "material" if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is "genuine" if a rational trier of fact could find for the nonmoving party on the evidence presented. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). In performing

2

this analysis, the factual record and any reasonable inferences from it are construed in the light most favorable to the nonmoving party. *Id.*

Even when a party fails to appropriately respond to the request for summary judgment and its purportedly undisputed facts, the Court is nevertheless obligated to ensure the movant has satisfied the standard under Rule 56. As the Tenth Circuit explained in *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1255 (10th Cir. 2017), "in granting summary judgment based upon a failure to respond, a district court must still determine that summary judgment is appropriate." *See also* Fed. R. Civ. P. 56(e)(3) advisory committee's notes to 2010 amendment.

## UNDISPUTED MATERIAL FACTS

Under Fed. R. Civ. P. 56(c), when parties assert that a fact is genuinely disputed, they must support the assertion with citations to specific parts of the record. When they fail to, the Court may consider the fact undisputed for purposes of deciding the motion. Fed. R. Civ. P. 56(e)(2). Additionally, in reference to motions for summary judgment, this Court's Standing Order for Civil Cases directs that general references to record materials are insufficient where the cited document exceeds one page. *See* SKC Standing Order Civ. § C.4.4. When the document contains multiple pages, the Court requires the parties to make specific references to the evidence. *Id.* As the Standing Order says, a "specific reference" means reference to page numbers, line numbers, paragraph numbers, or any combination of these to assist the Court in locating the pertinent materials. *Id.*

At various times in her response to UMB's statement of undisputed facts, Plaintiff disputes particular facts or asserts new facts and then generally cites to deposition testimony—some sections over ten pages long—without any specificity as to what statements the Court ought to rely on. *See, e.g.,* Dkt. 52, (Additional Facts) ¶9 (supporting a factual assertion with unspecified string cite of 15 pages of deposition testimony). This roughshod approach leaves it to the Court and UMB to speculate on what portion of Plaintiff's exhibits could possibly support her arguments. That is not the Court's function.

"Judges are not like pigs, hunting for truffles buried in briefs." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (citation and quotations omitted). The Court has no obligation to scour the record in search of evidence to support a party's factual assertions. And where Plaintiff has directed the Court to broad-swath record citations, the Court has ignored them because they equate to no citation at all. *See id.* ("Without a specific reference, [courts] will not search the record in an effort to determine whether there exists dormant evidence. . . .") (cleaned up); *see also Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him.").

In addition, Plaintiff frequently engages in strawman arguments wherein she purportedly disputes UMB's facts but does not directly address the factual contention and instead injects tangential issues into the response. *See, e.g.*, Dkt. 52, ¶¶16, 17,

4

24, 31, 35, 51. This is insufficient to establish a genuine dispute for a jury. *Ayon v. Gourley*, 47 F. Supp. 2d 1246, 1252 (D. Colo. 1998) (evidence that is not significantly probative and immaterial factual disputes will not defeat a motion for summary judgment). With these observations in mind, the Court accepts the following facts, which UMB has appropriately supported by competent evidence and specific record citations, as undisputed:

Plaintiff joined UMB in March 2021 as a Relationship Manager and Vice President Institutional Banking and Corporate Trust Services, and worked primarily on municipal bond deals, closing transactions, and servicing clients. Dkt. 52, ¶¶1, 2. Plaintiff had a hybrid work schedule and sometimes spent weeks without working in the office. *Id.* at ¶5.

On November 15, 2022, Plaintiff was diagnosed with cancer. *Id.* at ¶6. Plaintiff informed her supervisor, John Wahl, of her diagnosis and that her surgery was scheduled for December 6, 2022.[1] *Id.* at ¶7. Plaintiff also requested and was approved for FMLA[2] leave from December 6, 2022, to February 27, 2023. *Id.* at ¶24. On January 23, 2023, Plaintiff requested additional leave and was approved for non-FMLA leave from February 28, 2023, to May 28, 2023. *Id.* at ¶26. She made a third request for

---

[1] Other facts regarding Plaintiff's relationship and interactions with Mr. Wahl are discussed below as relevant to Plaintiff's claims.

[2] The Family and Medical Leave Act provides eligible employees with up to 12 weeks of unpaid, job-protected leave in a 12-month period. 29 U.S.C. §§ 2601, *et seq*.

5

leave on March 22, 2023, which was approved and extended her non-FMLA leave until August 6, 2023. *Id.* at ¶27.

On June 8, 2023, Plaintiff made a final request for leave and sought until September 10, 2023, to return to work. *Id.* at ¶28. Upon receiving this request, Mr. Wahl met with Doug Hare (his direct supervisor), Austin Braithwait (EVP, Executive Director – Investor Solutions and Corporate Trust), and Lynda Beahm-Lemmer (Senior Associate Relations Partner) (collectively "the UMB executives"). *Id.* at ¶29. In this meeting, the UMB executives discussed the company's needs in Colorado, the continued viability of holding Plaintiff's position open, and the possibility Plaintiff could make even further requests for leave *Id.* at ¶30. The executives ultimately concluded this fourth request would cause UMB undue hardship.[3] *Id.* at ¶¶31-33. Consequently, on June 21, 2023, UMB denied Plaintiff's fourth request for leave. *Id.* at ¶34.

After learning of the denial, Plaintiff contacted Mr. Hare to discuss her request. *Id.* at ¶40. During their conversation, Plaintiff assured Mr. Hare she could return to work on September 10, 2023, and that she did not anticipate needing any further time off. *Id.* at ¶41. Based on this, Mr. Hare told Plaintiff he would discuss her request with Mr. Wahl and Mr. Braithwait and follow up with her. *Id.* at ¶42.

---

[3] The Court includes additional undisputed facts regarding UMB's reasoning in its discussion of Plaintiff's failure to accommodate claim. *See Infra*, Section B.

6

When Mr. Hare informed the other UMB executives that he was confident Plaintiff would return in September, they decided to grant Plaintiff's leave request through September 10, 2023. *Id*. at ¶43. UMB's third-party leave administrator, Unum, sent Plaintiff notice that her fourth leave request was granted and that the previous denial was now superseded. *Id*. at ¶46. In addition, Mr. Hare called Plaintiff on two occasions to tell her the UMB executives had reconsidered the denial and granted her final request; however, he did not feel comfortable leaving details regarding personal matters on her voicemail. *Id*. at ¶¶45, 52. Plaintiff returned Mr. Hare's first call while he was out of the office, and she never responded to his second voicemail. *Id*. at ¶¶51, 53.

On August 29, 2023, UMB's in-house counsel contacted Plaintiff's attorney to inquire whether Plaintiff would be returning to work. *Id*. at ¶53. Plaintiff responded that she would not. *Id*. at ¶54. Accordingly, UMB processed Plaintiff's separation on September 8, 2023. *See* Dkt. 34-9, p.4; Dkt. 52-3, p.2. This lawsuit followed. Dkt. 1.

## ANALYSIS AND FINDINGS

Plaintiff's claims in this matter are based on her contention UMB discriminated against her, failed to accommodate her disability, and retaliated against her for engaging in protected conduct. She brings her claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq.*, and the Colorado Anti-Discrimination Act (CADA), Colo. Rev. Stat. §§ 24-34-402, *et seq*. The ADA and CADA both prohibit discrimination against qualified individuals because of a

7

disability. 42 U.S.C. § 12112(a); Colo. Rev. Stat. § 24-34-402(1)(a). "Whenever possible, the CADA should be interpreted consistently with the [ADA]." *Tesmer v. Colorado High Sch. Activities Ass'n*, 140 P.3d 249, 253 (Colo. App. 2006).

In its Motion, UMB contends that based on the undisputed material facts, no jury could reasonably conclude it violated either statute. The Court agrees.

**A.      Discrimination (Claim One)**

The ADA provides that a "covered entity" may not discriminate "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Dansie v. Union Pacific Railroad Co.*, 42 F.4th 1148, 1192 (10th Cir. 2022) (citing 42 U.S.C. § 12112(a)). In the absence of direct evidence of discrimination, courts use the *McDonnell Douglas*[4] burden-shifting framework. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018).

Under this framework, a plaintiff has the burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802. Should the plaintiff meet her burden, it then shifts to the defendant employer to articulate a legitimate and nondiscriminatory reason for the adverse employment action. *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012).

---

[4] The framework is from the Supreme Court's decision in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-03 (1973).

8

If the employer successfully states a non-discriminatory or non-retaliatory reason(s) for its actions, the plaintiff must then present evidence to show the employer's reason(s) is pretextual. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008). "Mere conjecture that the employer's explanation is pretextual is insufficient to defeat summary judgment." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

To establish a prima facie case of disability discrimination, Plaintiff must show "(1) that [she] is disabled within the meaning of the ADA; (2) that [she] is qualified for the job held or desired; and (3) that [she] was discriminated against because of [her] disability". *Lincoln v. BNSF Ry. Co.*, 900 F.3d at 1192 (citing *Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1218-19 (10th Cir. 2016)). To demonstrate "discrimination," a plaintiff generally must show that she has suffered an "adverse employment action because of the disability." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011). An employment action is adverse if a plaintiff can demonstrate she experienced "some harm respecting an identifiable term or condition of employment" because of that action. *Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc.*, 144 F.4th 1212, 1216 (10th Cir. 2025)[5] (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024)). This means an employer's action "must have left

---

[5] In *Scheer*, the Tenth Circuit joined its sister circuits in applying *Muldrow's* some-harm standard not only to Title VII claims, but also to ADA claims. *Scheer*, 144 F.4th at 1216, n.3.

9

[the plaintiff] worse off, but need not have left her significantly so." *Id.* (recognizing *Muldrow*, "unambiguously changed the legal standard in [the Tenth Circuit], that has previously required significant, material, or serious injury").

In her discrimination claims, Plaintiff alleges that after disclosing her cancer diagnosis she was treated less favorably than others who had not disclosed disabilities or requested medical leave. She also alleges she was given an increased workload and asked to complete future tasks early; her manager berated her and yelled at her for requesting PTO; and her manager created a hostile work environment by "guilting her and treating her with hostility." Dkt. 1, ¶89(a) – (e). UMB contends Plaintiff has failed to establish any genuine issue of material fact as to whether she was subject to an adverse action.

Regarding her allegation she was treated less favorably than others, Plaintiff cites no evidence and makes no arguments regarding any other employees who were treated better. This undeveloped contention, therefore, is a nonstarter.

In her Response to UMB's Motion for Summary Judgment, Plaintiff disavows that she is asserting a separate claim for hostile work environment. She instead clarifies that her use of the term "hostile work environment" is simply to describe Mr. Wahl's behavior toward her after she requested leave. Dkt. 38, p.14. But the only evidence of this hostile behavior is Plaintiff's deposition testimony that Mr. Wahl yelled at her on a single occasion. Dkt. 52, ¶14. But the ADA, like Title VII, is neither a "general civility code" nor a statute making actionable the "ordinary tribulations of

10

the workplace." *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998). "[P]etty slights, minor annoyances, and simple lack of good manners" don't qualify as adverse employment actions. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). A single incidence of discourteous behavior does not rise to a change in the conditions of Plaintiff's employment even under *Muldrow*, *supra*, because there is no evidence this single slight made Plaintiff worse off.

The only adverse action remaining, therefore, is Mr. Wahl's purported increase in Plaintiff's workload and his demands that she complete work early. But the evidence does not support these contentions either. For example, Plaintiff relies heavily on Mr. Wahl's email dated November 19, 2022, which reads:

> Hi Sara,
> I'm trying to think about the highest priority things in order to help you out.
>
> Have you had a chance to review your 12/15 accounts and ticklers to see if any will have a mandatory redemption?
>
> I think that's probably highest priority, right now, on the 12/15 payers – after that, interest payments (special record dates) and maybe FDN's to the accountants. Sound right?
>
> Have you been able to start any of that?
>
> It looks like I can see a lot of your ticklers through BAW, but I'm not sure if those are just the ones that I'm listed as the backup RM on, or if its all of them.

Dkt. 34-2, p.2.

It is plain from the content of this email that Mr. Wahl neither demands that Plaintiff complete additional work nor accelerates the timeline for her to complete any tasks. He merely asks her about the status of various accounts and whether she

11

had begun working on them. To be sure, in her deposition Plaintiff admitted that at the time she believed Mr. Wahl was simply asking about her accounts so he could cover for her while she was on leave. Dkt. 34-1, p.13.

Similarly, Plaintiff cites another email exchange dated November 25, 2022, as evidence that Mr. Wahl was hostile and added to her workload. But in this message, Mr. Wahl again simply makes inquiries over matters pertaining to her accounts. Dkt. 34-4. Plaintiff's characterizations of these communications are simply not supported by the evidence. Without more, no reasonable jury could conclude Mr. Wahl increased or accelerated Plaintiff's workload such that it constituted a negative change in the conditions of her employment.

UMB is entitled to summary judgment on this claim.

### B. Failure to Accommodate (Claim Two)

Discrimination under the ADA is also defined to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." *Punt v. Kelly Servs.,* 862 F.3d 1040, 1048 (10th Cir. 2017). Because the Tenth Circuit has concluded that any failure to provide a reasonable accommodation for a disability is necessarily *because of* the disability, employees need not prove discriminatory intent on the part of the employer. *Id*. Consequently, courts

apply a modified *McDonnell Douglas* burden-shifting framework to failure-to-accommodate claims. *Lincoln*, 900F.3d at 1204.

"Under this modified framework, the employee must make an initial showing that (1) she is disabled; (2) she is otherwise qualified; and (3) she requested a plausibly reasonable accommodation." *Punt*, 862 F.3d at 1050 (cleaned up). Should the employee meet this burden, it then shifts to the employer "to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Id*. If the employer presents evidence of either, the burden then shifts back to the employee to establish a genuine dispute regarding those affirmative defenses or to rehabilitate the elements of her prima facie case. *Id*. Should the employee fail to do so, summary judgment is appropriate. *Id*.

According to Plaintiff, UMB violated the ADA and CADA when it denied her accommodation request to extend her medical leave from August 7, 2023, to September 10, 2023. Dkt. 1, ¶104. Setting aside the undisputed evidence that UMB reconsidered its original denial and ultimately granted Plaintiff's request to extend her leave, the Court will—for the sake of argument—operate under the presumption that UMB denied Plaintiff's accommodation request. Even so, the undisputed material facts establish UMB's affirmative defense of undue hardship, and therefore, summary judgment is warranted on this claim.

13

As described in the Court's recitation of undisputed material facts, upon receiving Plaintiff's fourth request for medical leave, the UMB executives met to discuss the matter.[6] Dkt. 52, ¶29. They evaluated UMB's Colorado business needs and the viability of holding Plaintiff's position open particularly with the fourth quarter—the busiest time of year—approaching. *Id*. at ¶30. In addition, because Plaintiff had already requested several extensions, it is undisputed that the group believed there was a likelihood she would make a fifth request. *Id*. at ¶¶30, 34.

Mr. Wahl, who had been primarily responsible for covering Plaintiff's work while she was gone, felt it would be difficult to continue managing Plaintiff's books beyond August 6, 2023. *Id*. at ¶32. The UMB executives concluded that if Plaintiff's absence continued past August, UMB would need to hire a replacement to ensure this individual could be trained appropriately to meet the company's end-of-year needs. *Id*. at ¶33. If the position was not filled by August, a new employee would not have enough time for training, and UMB would not be able to meet its end-of-year demands. *Id*.

Plaintiff attempts to discredit UMB's affirmative defense by characterizing her accommodation request as seeking only 33 days of leave with a definite return date

---

[6] Plaintiff suggests this fact is disputed because the evidence shows there were two meetings, one in mid-June and one on June 29, 2023. The Court agrees there were two meetings, but this is not material to the issue regarding Defendant's affirmative defense. It was at the first meeting that UMB considered the request and determined that granting it would be unduly burdensome. On June 29, 2023, the UMB executives met again to discuss Plaintiff's newly provided assurance the fourth request would be her last. Thus, it is of no moment that there were two meetings in June.

14

of September 10, 2023. Dkt. 38, p.5. Her effort is unavailing though because "the Tenth Circuit considers leave time in the aggregate when considering whether a request for additional leave is reasonable." *Forge v. Sisters of Charity of Leavenworth*, No. 18-2204-JWL, 2019 WL 4241130, at \*5 (D. Kan. Sept. 6, 2019) (collecting Tenth Circuit cases wherein the circuit panels considered the total amount of time the employee was unable to work). To be sure, if an employer could only consider the most recent request for additional leave, "an employee could simply keep requesting leave in one-week or one-month increments in the hopes that such requests, standing alone, would be facially reasonable." *Id*. So, in its full context, Plaintiff's requested leave, December 6, 2023, to September 10, 2024, spanned over 9 months, which is presumptively unreasonable. *Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 933 (10th Cir. 2024) (In the Tenth Circuit "a leave of absence exceeding six months is per se unreasonable.").

Plaintiff's insistence that her fourth request for leave included a definite return date is similarly unconvincing. While the fourth leave request lists September 10, 2024, as Plaintiff's return date, so too did all of Plaintiff's prior requests include return dates. Each request included a return date that was ultimately extended. *See* Dkts. 34-6, 34-7, 34-18. There is nothing in Plaintiff's fourth request that assures UMB it will be the final one. Dkt. 34-8. It was not until *after* UMB considered the burdens and denied the request did Plaintiff assure Mr. Hare that she would, in fact, return to work in September.

15

Because Plaintiff has failed to create a disputed issue of material fact as to UMB's affirmative defense, the Court grants summary judgment in favor of UMB on Plaintiff's failure to accommodate claim. *Punt*, 862 F.3d at 1050.

**C.    Retaliation**

Turning to Plaintiff's claims of retaliation, the ADA prohibits employers from discriminating "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Where, as here, Plaintiff seeks to prove her claim via circumstantial evidence of discrimination, the Court returns to the unmodified *McDonnell Douglas* framework. *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016).

A prima facie case of ADA retaliation requires a plaintiff to demonstrate that "[she] (1) engaged in a protected activity; (2) [she] was subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action." *Id*. at 1186-87 (internal quotations and citation omitted). Requesting a reasonable accommodation is a protected activity under the ADA. *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007), *overruled on other grounds by Lincoln*, 900 F.3d at 1185-86.

According to Plaintiff, she engaged in the protected activities of reporting Mr. Wahl's hostile behavior to Mr. Hare and requesting her fourth extension of medical leave. Dkt. 1, ¶¶121(a), (b). She contends UMB then retaliated against her for this conduct by denying her accommodation request and firing her.

With respect to UMB's initial denial of Plaintiff's accommodation request, this Court has already discussed the matter in addressing her failure to accommodate claim. Its reasoning is equally applicable here. UMB articulated a legitimate and nondiscriminatory reason for the adverse employment action, that is, it would have been an undue burden to grant Plaintiff a further extension of medical leave. *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). And Plaintiff failed to establish any dispute of material facts undermining UMB's reasons. *See* Section B, *supra*.

In her response, Plaintiff attempts to establish pretext by arguing that UMB did not follow normal procedures regarding the denial of her request. Dkt. 38, p.20. However, she then cites only to purported irregularities in the way UMB attempted to communicate its *reconsideration* and *granting* of her request. *Id.* She also *lists* numerous other actions that she considers evidence of pretext but offers no analysis of how they are so. *Id.* at pp.20-21. The Court will neither guess as to the connections nor craft the explanations for Plaintiff. *See A Brighter Day, Inc. v. Barnes*, 860 F. App' x 569, 575 (10th Cir. 2021) (declining to consider "underdeveloped" arguments that contained "mostly general legal statements and empty platitudes"); *Tillmon v.*

17

*Douglas Cty.*, 817 F. App'x 586, 589-90 (10th Cir. 2020) (declining to address a legal question where defendants' analysis was "cursory at best").

The Court next turns to Plaintiff's contention she was fired in retaliation for complaining about Mr. Wahl's conduct and making accommodation requests. While termination of employment is an adverse employment action, the Court nevertheless concludes UMB is entitled to judgment in its favor because the undisputed material facts show Plaintiff was not fired, she voluntarily resigned.

According to the undisputed evidence, UMB's initial accommodation denial letter, dated June 22, 2023, informed Plaintiff that if she did not return to work on August 7, 2023, her employment would end as of that date. Dkt. 52, ¶35. But on June 29, 2023, while Plaintiff was undisputedly still employed, the UMB executives reconsidered the denial and granted Plaintiff's request to extend her leave until September 10, 2023. *Id.* at ¶¶43-44. After sending Plaintiff notice that her request had been granted and after several attempts to contact Plaintiff by phone, UMB's counsel sent Plaintiff's attorney a letter noting that her extension had been granted and asking whether she would be returning to work on September 11, 2023. *Id.* at ¶¶45-46, 51-52, 54. Plaintiff, via her counsel, stated she would not. *Id.* at ¶54.

In her Response, Plaintiff insists she was fired because UMB never told her about the reconsideration. Dkt. 38, pp.16-17. She contends that UMB did not in fact mail her any notice that her request had been granted. *See* Dkt. 52, ¶46. Her deposition testimony, however, is that she does not remember receiving any letter.

18

Dkt.39-1, p.26. These are two very different facts; her inability to recall receiving the letter does not refute the undisputed material fact that UMB sent the letter.

But even setting the letter aside, the facts show Plaintiff knew that Mr. Hare intended to speak with the other UMB executives about Plaintiff's request. Dkt. 39-1, p.25. And she knew he planned to tell them that September 10, 2023, was a definite end date for her leave. *Id.* Plaintiff further admits Mr. Hare told her he would get back to her about the request, and she admits receiving his voice messages. *Id.* at pp.25-26. Thus, it is undisputed that UMB attempted to inform Plaintiff that her extension was granted. That Plaintiff—perhaps willfully—remained ignorant of their decision does not change the fact that it was made and she in fact remained employed.

Despite her insistence on the matter, Plaintiff has cited no authority supporting the proposition that an employee is deemed terminated whenever she believes it to be so, and the Court is aware of none. Because no reasonable jury could conclude either that UMB's reasons for initially denying Plaintiff's fourth request were pretextual or that UMB fired Plaintiff, the Court will enter summary judgment in UMB's favor on Plaintiff's retaliation claim.

## C.     Colorado Anti-Discrimination Act

Each of Plaintiff's ADA claims are also asserted pursuant to the Colorado Anti-Discrimination Act, Colo. Rev. Stat. §§ 24-34-402 *et. seq. See generally* Dkt. 1. Because these statutes are analyzed under the same legal standards, *Tesmer*, 140 P.3d at 253, the Court concludes UMB is also entitled to judgment on Plaintiff's state law claims.

19

\* \* \*

For the reasons shared above, IT IS ORDERED:

1. Defendant UMB's Motion for Summary Judgment (Dkt. 33) is GRANTED and the claims against it are dismissed;

2. The Clerk of Court shall enter judgment in favor of UMB, which is entitled to an award of its costs.

DATED: January 7, 2026.

BY THE COURT:

S. Kato Crews
United States District Judge

20